**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JF 9058)
Brian S. Schaffer (BS 7548)
Eric J. Gitig (EG 7399)
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CRISOFORO TIRO, LEONARDO CORTES, ENRIQUE HERNANDEZ, and HUMBERTO CAMPOS LARA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>**PUBLIC HOUSE INVESTMENTS, LLC, PUBLIC HOUSE NYC, LLC, PUBLIC HOUSE MGMT NYC, LLC, BUTTERFIELD 8 NYC, LLC, MARTELL'S NYC, LLC, BLACK FINN NYC, LLC, CHRIS COCOZZIELLO, BRIAN HARRINGTON, GARY CARDI, and FRANK FALESTO**,<br><br>Defendants. | **11 Civ. 7679 (CM)** |
| **RODOLFO TEJADA VILLA** and **ENRIQUE HERNANDEZ**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>**PUBLIC HOUSE INVESTMENTS, LLC, PUBLIC HOUSE NYC, LLC, PUBLIC HOUSE MGMT NYC, LLC, BUTTERFIELD 8 NYC, LLC, MARTELL'S NYC, LLC, BLACK FINN NYC, LLC, CHRIS COCOZZIELLO, BRIAN HARRINGTON, GARY CARDI, and FRANK FALESTO**,<br><br>Defendants. | **11 Civ. 8249 (CM)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF STATE LAW CLAIMS PURSUANT TO FED. R. CIV. P. 23

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................. iii

**INTRODUCTION** ............................................................................................... 1

**PRELIMINARY STATEMENT** ......................................................................... 1

**FACTS** ............................................................................................................... 3

I.     **DEFENDANTS OWN, OPERATE AND CONTROL A SINGLE INTEGRATED ENTERPRISE THAT JOINTLY EMPLOYS PLAINTIFFS AND THE RULE 23 CLASSES.** .................................................... 3

    A.     **The Individual Defendants Operate Public House Investments.** ..................... 3

    B.     **Public House Investments Operates The New York Restaurants.** ................... 4

    C.     **The Public House Investments Restaurants Share Employees.** ........................ 6

II.    **DEFENDANTS FAILED TO PAY EMPLOYEES FOR ALL HOURS WORKED.** ............................................................................................. 8

    A.     **Overtime Compensation** .................................................................. 8

    B.     **Spread-Of-Hours Pay** ...................................................................... 9

    C.     **Minimum Wage** ............................................................................... 9

III.   **DEFENDANTS MISAPPROPRIATED TIPS.** ........................................... 10

**ARGUMENT** ................................................................................................... 12

I.     **PLAINTIFFS MEET ALL OF THE RULE 23 REQUIREMENTS.** ............ 12

    A.     **Plaintiffs Satisfy The Requirements Of Rule 23(a).** ..................... 13

        1.     **Numerosity** ........................................................................ 13

        2.     **Commonality** ..................................................................... 14

        3.     **Typicality** .......................................................................... 16

        4.     **Adequacy** .......................................................................... 18

**B.**     **Class Certification Under Rule 23(b)(3) Is Appropriate.** ............................... 19

    **1.**     **Common Questions Of Law And Fact Predominate.** ............................ 19

    **2.**     **A Class Action Is The Superior Mechanism.** ........................................... 21

**C.**     **Plaintiffs' Counsel Should Be Appointed As Class Counsel.** ......................... 23

**D.**     **The Proposed Class Notices Are Appropriate.** ................................................ 24

**CONCLUSION** ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**..........................................................................................**Page Number**

*Aponte v. Comprehensive Health Mgt., Inc.*,
   No. 10 Civ. 4825 (PKC), 2011 WL 2207586 (S.D.N.Y. June 2, 2011) ................................... 12

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ........................ 14-15

*Benavidez v. Plaza Mexico Inc.*,
   Nos. 09 Civ. 5076 (THK), 09 Civ. 9574 (THK),
   2012 WL 500428 (S.D.N.Y. Feb. 15, 2012).........................................................................9-10

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ...................................... 17

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).............................................. 17

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001).............................................. 14, 15

*Garcia v. Pancho Villa's of Huntington Vil., Inc.*,
   No. 09 Civ. 486 (ETB), 2011 WL 6287932 (E.D.N.Y. Dec. 15, 2011) ........................... *passim*

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009) ................................................... 13

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)................... 14, 17, 20

*In re Initial Pub. Offerings Sec. litig.*, 471 F.3d 24 (2d Cir. 2006).........................................12-13

*Jankowski v. Castaldi*,
   No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006)...................... 21-22

*Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*,
   No. 08 Civ. 3725 (DC), 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010).................................... 9

*Karic v. Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) ....................19

*Lovaglio v. W & E Hospitality Inc.*,
   No. 10 Civ. 7351 (LLS), 2012 WL 1890381 (S.D.N.Y. March 12, 2012) ...........................19, 24

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) ......................................... 13, 14, 15, 16

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011).................... 16, 19, 24

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ....................................................... 19

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................................................. 13, 23

*O'Dell v. AMF Bowling Centers, Inc.*,
    No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009)........................... 18, 19, 24

*Pineda v. Masonry Const., Inc.*,
    No. 09 Civ. 2356 (RO), 2011 WL 5572631 (S.D.N.Y. Nov. 15, 2011) ................................. 7-8

*Ramos v. Simplexgrinnell LP*, 796 F. Supp. 2d 346 (E.D.N.Y. 2011)......................................... 20

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)........................................................................ 16

*Romero v. H.B. Automotive Group, Inc.*,
    No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012)............................... *passim*

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .................................................. 20

*Salomon v. Adderley Indus., Inc.*,
    No. 11 Civ. 6043 (PAC), 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) ........................................19

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ............. 13, 16, 18

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010)........................................................ *passim*

*Stinson v. City of New York*,
    No. 10 Civ. 4228 (RWS), 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012)................................. 19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)..................................................................................................... 12, 13

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC),
    2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)................................................................. 12, 22, 23

*Trinidad v. Breakaway Courier Sys., Inc.*,
    No. 05 Civ. 4116 (RWS), 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ....................... 20, 22, 23

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698 (SAS), 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005)..................................... 22

*In re Visa CheckiMasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................ 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................. 14

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011)...................... *passim*

**New York State Cases**.........................................................................................**Page Number**

*Krebs v. Canyon Club, Inc.*, No. 10431/08 (ADS), 2009 WL 440903 (Sup.Ct. Jan. 2, 2009)..........11

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) ...........................................................11

**Statutes**.....................................................................................................**Page Number**

New York Labor Law ("NYLL") Article 6, § 196-d.......................................... 10, 11, 12, 16, 21

NYLL Article 19, §§ 650 *et seq.*.................................................................................. 8, 9

NYLL Article 19, § 652.................................................................................................

**Rules & Regulations** ......................................................................................**Page Number**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ................................................................................................. *passim*

Fed. R. Civ. P. 23(a)(1).............................................................................................. 13, 14

Fed. R. Civ. P. 23(a)(2)............................................................................................ 14, 15, 16

Fed. R. Civ. P. 23(a)(3)............................................................................................ 16, 17, 18

Fed. R. Civ. P. 23(a)(4)............................................................................................... 18, 19

Fed. R. Civ. P. 23(b) ................................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3)...................................................................................... 19, 20, 21, 22, 23

Fed. R. Civ. P. 23(c) .................................................................................................... 2, 24

Fed. R. Civ. P. 23(g) ................................................................................................. 2, 23, 24

12 N.Y.C.R.R. § 137-1.3 ................................................................................................... 8

12 N.Y.C.R.R. § 137-1.7 ........................................................................................ 9

12 N.Y.C.R.R. § 137-2.1 ........................................................................................ 9

12 N.Y.C.R.R. § 137-2.2 ........................................................................................ 9

12 N.Y.C.R.R. § 146-1.3 ........................................................................................ 9

12 N.Y.C.R.R. § 146-1.4 ........................................................................................ 8

12 N.Y.C.R.R. § 146-1.6 ........................................................................................ 9

12 N.Y.C.R.R. § 146-2.2 ........................................................................................ 9

**Other Authorities** ...............................................................................**Page Number**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:23 (6th ed. 2010) ......................... 20

Plaintiffs Crisoforo Tiro, Leonardo Cortes, Enrique Hernandez, Humberto Campos Lara, and Rodolfo Tejada Villa (collectively, the "Named Plaintiffs") submit this memorandum in support of their motion for class certification of their New York state wage and hour claims pursuant to Fed. R. Civ. P. 23.

## PRELIMINARY STATEMENT

This action arises from the failure of Defendants Public House Investments, LLC, Public House NYC, LLC, Public House MGMT NYC, LLC, Butterfield 8 NYC, LLC, Martell's NYC, LLC, Black Finn NYC, LLC, Chris Cocozziello, Brian Harrington, Gary Cardi, and Frank Falesto (collectively "Defendants") to pay the Named Plaintiffs and the members of the putative classes all wages owed in accordance with the New York Labor Law ("NYLL"). The Named Plaintiffs have all worked for Defendants in various tipped and non-tipped positions at Public House New York ("Public House"), Butterfield8 Restaurant & Lounge ("Butterfield"), Wicker Park Bar & Bistro ("Wicker Park"), and/or Tammany Hall Tavern/Black Finn ("Black Finn") in New York (collectively, the "New York Restaurants") during the relevant time periods.

On October 28, 2011, Plaintiffs Crisoforo Tiro, Leonardo Cortes, Enrique Hernandez, and Humberto Campos Lara commenced this action on behalf of themselves and all similarly situated tipped/front of house employees at the New York Restaurants. *See Tiro v. Public House Investments, LLC*, No. 11 Civ. 7679, Docket No. 1. On November 15, 2011, Plaintiffs Rodolfo Tejada Villa and Enrique Hernandez filed a second Complaint against Defendants on behalf of themselves and all similarly situated back of house/non-tipped employees at the New York Restaurants. *See Tejada Villa v. Public House Investments, LLC*, No. 11 Civ. 8249, Docket No. 1. Plaintiffs' Complaints allege that, in violation of the NYLL, Defendants have had a policy and practice of not paying employees for all time worked, by:

1. Failing to pay premium overtime compensation – at 1.5 times their hourly rate – for hours worked in excess of forty per workweek;

2. Failing to pay an additional hour's pay at the basic minimum hourly rate for each day in which employees' spread of hours exceeded ten hours;

3. Failing to pay the proper minimum wage rate for all hours worked (tipped/front of house employees only); and

4. Unlawfully retaining portions of mandatory gratuities and/or service charges that were collected at private events (tipped/front of house employees only).

The two actions have since been consolidated by the Court.  *See* Declaration of Brian Schaffer ("Schaffer Decl.") ¶ 5.  Additionally, 26 individuals have joined the case pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").  *See* Id. ¶ 7.

The instant motion seeks an Order granting certification of Plaintiffs' claims asserted under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In that regard, Plaintiffs seek certification for two classes of restaurant employees, consisting of:

> (1) All persons who work or have worked as tipped, hourly food service workers, including, without limitation, waiters, bussers, runners, bartenders, and barbacks (collectively "tipped employees") at the New York Restaurants between October 28, 2005 and the date of final judgment in this matter (the "Tipped Rule 23 Class"); and

> (2) All persons who work or have worked as non-exempt employees, including, without limitation, cooks, food preparers, and dishwashers (collectively "non-tipped employees") at the New York Restaurants between November 15, 2005 and the date of final judgment in this matter (the "Non-Tipped Rule 23 Class") (collectively, the "Rule 23 Classes").

Plaintiffs also respectfully request that their counsel, Fitapelli & Schaffer, LLP ("F&S"), be appointed as class counsel under Rule 23(g), and that the Court approve the proposed Class Notices pursuant to Rule 23(c)(2)(B).

<u>**FACTS**</u>

**I.    DEFENDANTS OWN, OPERATE AND CONTROL A SINGLE INTEGRATED ENTERPRISE THAT JOINTLY EMPLOYS PLAINTIFFS AND THE RULE 23 CLASSES.**

Defendants are part of a single integrated enterprise that has jointly employed the Named Plaintiffs and the members of the Rule 23 Classes at all times relevant.  This enterprise is centrally controlled by Public House Investments, LLC ("Public House Investments"), which manages and oversees each of the New York Restaurants.  At all times, Public House Investments has been owned and operated by Defendants Chris Cocozziello, Brian Harrington, Gary Cardi, and Frank Falesto (collectively, the "Individual Defendants").  Including the New York Restaurants, Public House Investments owns, operates and controls over 15 bars and restaurants across the country.

**A.    <u>The Individual Defendants Operate Public House Investments.</u>**

The Individual Defendants have held themselves out to be the common owners and operators of Public House Investments and its restaurants, including the New York Restaurants, throughout the relevant period.  This is reflected in numerous print and online articles and interviews, which link the Individual Defendants to the enterprise and its "four locations in New York City."  *See* **Exhibit ("Ex.") A**, Articles.[1]  In fact, in a 2009 radio interview, Defendant Brian Harrington ("Harrington") stated that he and his "three partners" operate "a regional restaurant chain [operating] pubs and restaurants between Stamford Connecticut and Washington, D.C.," and that Public House Investments then comprised of "ten locations and … just over 1,000 employees," but was expanding to "18 or 19 units."  *See* **Ex. B**, Brian Harrington Radio Interview at 1:12-14, 1:21-22, 2:28, 6:11-13.  According to Harrington, the company:

> [Does] business development and real estate and site selection and design and construction of restaurants.  And then ***once they're built,***

---

[1]      All Exhibits are attached to the Schaffer Decl.

> *we operate them* … Operations is such a big part of it that there are
> really three pieces to it.  There's an opening to put systems in place
> to make sure that a restaurant can operate.  There's, you know,
> profitability, to make sure once it's open, that it can be streamlined
> and it can actually make money.  And then there's long-term kind of
> sales and marketing, which makes it stay around for ten years.

*See* Id. at 5:16-26 (emphasis added).  Harrington further stated that Public House Investments

operates in the New York market, and listed the website address for the company as

"PublicHouseUSA.com."  *See* Id. at 5:2-3, 7:4.

In addition, Harrington has created at least one company-wide policy, which was emailed

to employees of the various Public House Investments restaurants, and included an attached sales

report template.  *See* **Ex. C**, March 21, 2007 E-mail.  In this email, Harrington not only stated

that the template should be used "so that everyone is on the same page with regard to how the

sales should be reported on a nightly basis," but further stressed that, "[a]s we grow *it becomes*

*more important to streamline and standardize things like this that we all do on a daily basis*."

*See* Id. (emphasis added).  Moreover, Harrington specifically directed recipients to send the

nightly email reports to the Named Defendants, as well as Lindsey Paris, the Public House

Investments accountant/controller.  *See* Id.

Similarly, the Individual Defendants have also organized and led annual, company-wide

meetings, which included employees from most of the restaurants owned by Public House

Investments.  *See* **Ex. D**, Declaration of Gretchen Brinson ("Brinson Decl.") ¶ 13.  Further, at

least one of the Individual Defendants is listed as a "principal" on the New York State Liquor

Authority license for each of the New York Restaurants.  *See* **Ex. E**, Liquor Licenses.

**B.**      **Public House Investments Operates The New York Restaurants.**

Public House Investments has also held itself out as a single integrated enterprise that

centrally operates a family of restaurants, including the four New York Restaurants.  In that regard,

publichouseusa.com, listed all of the restaurants owned by Public House Investments, provided information and links to each individual location, and specifically welcomed visitors "to the family." *See* **Ex. F**, Publichouseusa.com Screenshots.  Links back to the main Public House Investments page were also present on the New York Restaurants' websites, which were copyrighted by Public House Investments.  *See* **Ex. G**, New York Restaurants' Screenshots.  Following the filing of the lawsuits, the majority of the publichouseusa.com webpage was taken down, and the links to Public House Investments were removed from the individual New York Restaurants' websites.  However, links to past events at the New York Restaurants can still be viewed at the publichouseusa.com domain.  *See* **Ex. F**, Publichouseusa.com Screenshots.  Additionally, business cards used by management-level employees of the New York Restaurants also feature the logo of each Public House Investments' restaurant printed on the back, as well as a "@publichouseusa.com" corporate email account.  *See* **Ex. H**, Business Cards.  Public House Investments also owns various trademarks for the New York Restaurants.  *See* **Ex. I**, Trademark Records.

Interrelated operations, common management, and centralized labor relations further demonstrate that Public House Investments is a single integrated enterprise.  In that regard, various employees and managers at the New York Restaurants receive their salaries and benefits from Public House Investments (not from the individual restaurants' payroll accounts), and receive a corporate "@publichouseusa.com" email account.  *See* **Ex. D**, Brinson Decl. ¶¶ 4, 8, 15; **Ex. J**, Declaration of Lindsey Mayo ("Mayo Decl.") ¶¶ 4, 5, 6, 8, 9.  Employees have also been invited to participate in company-wide conference calls, and visit Public House Investments' corporate office in Philadelphia.  *See* **Ex. D**, Brinson Decl. ¶¶ 12, 14.  Moreover, the Public House Investments accountant/controller, Lindsay Paris, oversees payroll at all of the New York Restaurants.  *See* **Ex. D**, Brinson Decl. ¶¶ 9, 13; **Ex. J**, Mayo Decl. ¶ 7.

Ms. Paris is one of several employees of Public House Investments who is responsible for managing and overseeing practices and procedures for the entire "family" of restaurants.  Other employees include, but are not limited to: Joe Schimmel, the regional manager of the New York Restaurants; Brian Cooke, the Director of Culinary Arts; Clayre Brown, a Director who developed and implemented a company-wide training program that served over 1,000 employees; and Ashley Cardoso, the Director of Marketing.  *See* **Ex. K**, Public House Investments Employee Profiles; *see also* **Ex. D**, Brinson Decl. ¶ 9; **Ex. J**, Mayo Decl. ¶ 7; Declaration of Stephanie Schrauth ("Schrauth Decl.") ¶ 12; Declaration of Irina Ivanova ("Ivanova Decl.") ¶ 9.

Public House Investments has also created and implemented company-wide policies and procedures to be used at the New York Restaurants.  In fact, Public House Investments both developed policies relating to payroll, accounting and human resources, and distributed various training materials, bookkeeping templates and human resources documents to be used at the New York Restaurants, including an "Employee Separation Information" form.  *See* **Ex. C**, March 21, 2007 E-mail; **Ex. L,** Separation Form; *see also* **Ex. D**, Brinson Decl. ¶ 9; **Ex. J**, Mayo Decl. ¶ 7. Many of these policies and procedures were discussed at the annual meeting.  *See* **Ex. D**, Brinson Decl. ¶ 13.  Moreover, private event contracts produced by Defendants in connection with this action reveal that the New York Restaurants used essentially identical event contracts.  *See* **Ex. M**, Private Event Contracts, Receipts and Tip Sheets ("Event Records").  At least one of these contracts evidence a private event that was booked at Public House, but held at Butterfield.  *See* Id., July 20, 2007 Butterfield Private Event Contract (specifically stating "Party from Public House").

### C.    <u>The Public House Investments Restaurants Share Employees.</u>

Employees and managers frequently worked at two or more of the New York Restaurants as part of their employment, at the direction of Defendants.  These employees generally did not receive

a separate payroll check from the additional location they were sent to work at, but were instead paid

in cash by their managers, if they were paid anything additional all.  Similarly, employees were also

required by their managers to pick up and/or drop off various items and supplies between the New

York Restaurants.  Employees who performed worked at multiple New York Restaurants include:

- Crisoforo Tiro: Performed worked at Public House, Butterfield, Wicker Park, and Black Finn.  *See* **Ex. N**, Deposition Transcript of Crisoforo Tiro ("Tiro Tr.") at 24:14-20, 25:19-26:5, 26:12-27:4, 34:6-8; Declaration of Crisoforo Tiro ("Trio Decl.") ¶ 3.

- Leonardo Cortes: Performed work at Public House, Wicker Park, and Black Finn.  *See* **Ex. O**, Deposition Transcript of Leonardo Cortes ("Cortes Tr.") at 14:2-4; 15:9-25, 17:8-18:13; Declaration of Leonardo Cortes ("Cortes Decl.") ¶ 3.

- Enrique Hernandez: Performed worked at Public House, Butterfield, Wicker Park, and Black Finn.  *See* **Ex. P**, Deposition Transcript of Enrique Hernandez ("Hernandez Tr.") at 13:15-24, 16:8-14, 27:4-25, 33:18-34:8; Declaration of Enrique Hernandez ("Hernandez Decl.") ¶ 3.

- Humberto Campos Lara: Performed worked at Public House, Butterfield, and Black Finn.  *See* **Ex. Q**, Deposition Transcript of Humberto Campos Lara ("Lara Tr.") at 9:7-12, 15:14-22, 17:11-14, 25:8-17; Declaration of Humberto Campos Lara ("Lara Decl.") ¶ 3.

- Rodolfo Tejada Villa: Performed work at Public House and Wicker Park.  *See* **Ex. R**, Deposition Transcript of Rodolfo Tejada Villa ("Tejada Villa Tr.") at 13:7-11, 15:15-17, 33:2-10; Declaration of Rodolfo Tejada Villa ("Tejada Villa Decl.") ¶ 3.

- Gretchen Brinson: Performed work at Public House and Wicker Park.  *See* **Ex. D**, Brinson Decl. ¶ 3

- Lindsey Mayo: Performed work at Public House, Butterfield, Wicker Park, and Black Finn.  *See* **Ex. J**, Mayo Decl. ¶ 3.

These facts demonstrate that the New York Restaurants have been part of a single

integrated enterprise that has been centrally owned, operated and controlled by the Individual

Defendants and the corporate parent, Public House Investments.  Consequently, given the

interrelated operations, common management, centralized control of labor relations, and common

ownership of the Public House Investments' restaurants, Defendants should be considered a single

employer subject to joint liability for employment-related acts.  *See Pineda v. Masonry Const.,*

*Inc.*, No. 09 Civ. 2356 (RO), 2011 WL 5572631, at *15 (S.D.N.Y. Nov. 15, 2011) (stating that plaintiffs' allegations that defendants were "nominally separate entities who are part of a single integrated enterprise having common ownership and/or management and which formed a single employer of Plaintiffs" permitted a finding that defendants "qualif[ied] as Plaintiffs' 'employer' for purposes of FLSA and NYLL" and impose joint and several liability) (listing cases).

## II.    DEFENDANTS FAILED TO PAY EMPLOYEES FOR ALL HOURS WORKED.

Though employees generally clocked in/out for their shifts at the New York Restaurants, Defendants regularly failed to pay employees for all of the hours they worked. This unlawful policy and practice is most notably evidenced by the differences in Defendants' time and payroll records, which clearly show that Defendants under-reported the hours employees worked for payroll purposes.

### A.    Overtime Compensation

Under the NYLL, an employer shall pay an employee for overtime at a wage rate of 1.5 times the employee's regular rate for all hours worked in excess of 40 hours in one workweek."  NYLL § 650 *et seq.*; 12 N.Y.C.R.R. §§ 137-1.3, 146-1.4.

Defendants' time and payroll records, supported by Plaintiffs' testimony and declarations, show that employees at the New York Restaurants regularly worked in excess of 40 hours per week, and were not paid 1.5 times their hourly rate for all of these hours.[2]  In fact, Joe Schimmel has stated that employees would not be paid 1.5 times their hourly rate for overtime hours in order to keep

---

[2]    *See* **Ex. N**, Tiro Tr. at 48:1-22; Tiro Decl. ¶¶ 6, 8, 9; **Ex. O**, Cortes Tr. at 22:3-25; Cortes Decl. ¶¶ 6, 8, 9; Hernandez Decl. ¶¶ 6, 8, 9, 10; **Ex. Q**, Lara Tr. at 29:6-12, 41:13-15; Lara Decl. ¶¶ 6, 8, 9; **Ex. R**, Tejada Villa Tr. at 22:18-21; Tejada Villa Decl. ¶¶ 5, 7, 8; Schrauth Decl. ¶ 6, 9; Declaration of Abigail Longero ("Longero Decl.") ¶ 14; Declaration of Israel Sanchez ¶¶ 5, 6; **Ex. S**, Employee Time and Payroll Records for Noe Dolores ("Dolores Records"); **Ex. T**, Employee Time and Payroll Records for Jacqueline Vanviliet ("Vanviliet Records"); **Ex. U**, Employee Time and Payroll Records for Gilberto Soriano ("Soriano Records"); **Ex. V**, Employee Time and Payroll Records for Rachel Rizzuto ("Rizzuto Records"); **Ex. W**, Employee Time and Payroll Records for Jose Campos ("Campos Records"); **Ex. X**, Employee Time and Payroll Records for Jackie Rossi ("Rossi Records"); *see also* **Ex. D**, Brinson Decl. ¶ 6; **Ex. J**, Mayo Decl. ¶ 5.

payroll costs down, and was even given bonuses based in part on keeping payroll costs down at the New York Restaurants. *See* **Ex. D**, Brinson Decl. ¶¶ 6, 8; **Ex. J**, Mayo Decl. ¶ 5. Defendants have also informed employees that the New York Restaurants were under-reporting the hours employees worked to payroll as a benefit to employees. *See* Schrauth Decl. ¶ 8. Thus, it was Defendants' common policy to deny employees overtime compensation, at 1.5 times their regular hourly rate.

### B.     Spread-Of-Hours Pay

Under the NYLL, employees are entitled to an additional hour's pay at the basic minimum hourly rate for each day in which their spread of hours exceeds ten hours. NYLL Article 19, §§ 650 *et seq.*; 12 N.Y.C.R.R. §§ 137-1.7, 146-1.6. Defendants' own payroll and time records verify that employees frequently worked in excess of 10 hours per day at the New York Restaurants without being paid spread-of-hours pay.[3]

### C.     Minimum Wage

Employers are required to pay their employees a minimum wage for all hours worked. *See* NYLL § 652(1). In order for employers to pay tipped employees a reduced minimum wage, an employer is required to: (1) "furnish to each employee a statement with every payment of wages listing … allowances … claimed as part of the minimum wage"; and (2) "maintain and preserve for not less than six years weekly payroll records which shall show for each employee … allowances … claimed as part of the minimum wage." *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (*citing* 12 N.Y.C.R.R. §§ 137-2.1, 137-2.2); *see also Benavidez v. Plaza Mexico Inc.*, Nos. 09 Civ. 5076

---

[3]       *See* Tiro Decl. ¶¶ 7, 8, 9; Cortes Decl. ¶¶ 7, 8, 9; Hernandez Decl. ¶¶ 7, 8, 9, 10; **Ex. Q**, Lara Tr. at 41:16-19; Lara Decl. ¶¶ 7, 8, 9; Tejada Villa Decl. ¶¶ 6, 7, 8; Longero Decl. ¶ 15; Schrauth Decl. ¶¶ 7, 9; Ivanova Decl. ¶¶ 6, 7; **Ex. S**, Dolores Records; **Ex. T**, Vanvliet Records; **Ex. U**, Soriano Records; **Ex. V**, Rizzuto Records; **Ex. W**, Campos Records; **Ex. X**, Rossi Records; *see also* **Ex. D**, Brinson Decl. ¶ 7; **Ex. J**, Mayo Decl. ¶ 6.

(THK), 09 Civ. 9574 (THK), 2012 WL 500428, at *6 (S.D.N.Y. Feb. 15, 2012) (*citing* 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2) (requiring written tip credit notification).

Defendants denied tipped employees minimum wage by unlawfully taking a tip credit and failing to pay the appropriate minimum wage rate. Defendants failed to notify tipped employees of the full minimum wage rate or tip credit under the NYLL, provide tipped employees with a statement with every payment of wages listing allowances claimed as part of the minimum wage, and maintain and preserve weekly payroll records showing allowances claimed as part of the minimum wage. *See* Tiro Decl. ¶¶ 4, 9; Cortes Decl. ¶¶ 4, 9; **Ex. P**, Hernandez Tr. at 17:20-22; Hernandez Decl. ¶¶ 4, 9, 10; **Ex. Q**, Lara Tr. at 23:12-21, 41:7-12; Lara Decl. ¶¶ 4, 9; Longero Decl. ¶ 13; Schrauth Decl. ¶ 4; Ivanova Decl. ¶ 4; **Ex. T**, Vanviliet Records; **Ex. V**, Rizzuto Records; **Ex. X**, Rossi Records. As a result, Defendants failed to satisfy the requirements laid out by the NYLL, which would allow them to lawfully take advantage of the tip credit.

In addition, Defendants further denied tipped employees minimum wage by under-reporting their hours on payroll documents. *See* Tiro Decl. ¶ 5; Cortes Decl. ¶ 5; Hernandez Decl. ¶ 5; **Ex. Q**, Lara Tr. at 31:14-17; Lara Decl. ¶ 5; Schrauth Decl. ¶¶ 5, 9; Ivanova Decl. ¶¶ 5, 7; **Ex. T**, Vanviliet Records; **Ex. V**, Rizzuto Records; **Ex. X**, Rossi Records.

## III.   DEFENDANTS MISAPPROPRIATED TIPS.

Throughout the relevant time period, Defendants have charged customers hosting private events at the New York Restaurants a fixed gratuity or service charge. *See* **Ex. M**, Event Records; *see also* Tiro Decl. ¶ 10; Cortes Decl. ¶ 10; Hernandez Decl. ¶ 11; Lara Decl. ¶ 10. Although this charge is purported to be a gratuity, and Defendants have treated the charge as such, Defendants have not distributed the full amount to tipped employees, in violation of NYLL § 196-d.

The NYLL provides that:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.

NYLL § 196-d.  In *Samiento v. World Yacht Inc.*, the New York State Court of Appeals held that: "[T]he statutory language of Labor Law § 196-d can include mandatory service charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees.  An employer cannot be allowed to retain these monies." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008).  Since *Samiento* was decided, several courts have certified classes in cases alleging this exact type of violation.  *See, e.g., Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Krebs v. Canyon Club, Inc.*, No. 10431/08 (ADS), 2009 WL 440903 (Sup.Ct. Jan. 2, 2009).

Private events were regularly held at the New York Restaurants.  Pursuant to the written contracts, customers hosting these events have been required to pay a mandatory gratuity or service charge equal to 18% to 25% of the cost for food and drinks.  *See* **Ex. M**, Event Records.

Regardless of the terminology used in the event contracts, Defendants have represented or allowed their customers to believe that the charges were in fact gratuities for the service employees, and have treated the money collected as such.  In fact, customer receipts generated at private events have specifically listed the charge as a "gratuity."  *See* Id.; *see also* Longero Decl. ¶ 10.  Moreover, Defendants consistently treated the mandatory gratuity/service charge as an after tax item, thereby further leading customers to believe that the fee was a gratuity.  *See* **Ex. M**, Event Records; *see also Samiento*, 10 N.Y.3d at 88 ("Plaintiffs should be entitled to show defendants' tax treatment of the charges since charges that are treated as gratuities for tax purposes could also be represented to patrons as being gratuities as well.").  Given that the mandatory gratuities/service

- 11 -

charges collected by Defendants have been specifically referred to as "gratuities," either in the event contract itself, the accompanying customer receipt, or both, the entire amount should have been paid to the service staff in accordance with NYLL § 196-d.

Nevertheless, Defendants' have not distributed the entire gratuity/service charge collected from private events to tipped employees.  In fact, private event tips sheets show that Defendants have retained a portion of the gratuities/service charges collected by designating a portion to the "House."  **Ex. M**, Event Records.   Additionally, Plaintiffs were specifically informed by Defendants that a portion of the gratuity/service charge collected was being retained by the house.  Tiro Decl. ¶¶ 11, 14; Cortes Decl. ¶ 11; Hernandez Decl. ¶¶ 12, 15; Longero Decl. ¶ 7.

## ARGUMENT

### I.     PLAINTIFFS MEET ALL OF THE RULE 23 REQUIREMENTS.

Rule 23 provides that certification is appropriate where, as here, plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b).  *Romero v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *16 (S.D.N.Y. May 1, 2012) (*citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008).

"On a motion to certify a class, the court accepts all allegations in the pleadings as true." *Aponte v. Comprehensive Health Mgt., Inc.*, No. 10 Civ. 4825 (PKC), 2011 WL 2207586, at *8 (S.D.N.Y. June 2, 2011) (*citing Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, *8 (S.D.N.Y. Sept. 29, 2006).  While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court."  *Romero*, 2012 WL 1514810, at *17 (*citing In re Initial Pub.

- 12 -

*Offerings Sec. litig.*, 471 F.3d 24, 41–42 (2d Cir. 2006)).  "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common*.'"  *Id.* (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence.  *Teamsters Local 445*, 546 F.3d at 202. Nevertheless, courts in this Circuit give Rule 23 a "liberal rather than restrictive construction," and "adopt a standard of flexibility when they apply it."  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal quotation marks omitted).

Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."  *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citations and internal quotation marks omitted).

### A.      Plaintiffs Satisfy The Requirements Of Rule 23(a).

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1)   The class is so numerous that joinder of all members is impracticable;
(2)   There are questions of law or fact common to the class;
(3)   The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)   The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### 1.      Numerosity

Under Rule 23(a)(1), numerosity is presumed where a putative class has forty or more members.  *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).  According to the class lists provided by Defendants in connection with the sending of notice under FLSA § 216(b), Defendants employed over 400 tipped employees and

over 150 non-tipped employees at the New York Restaurants.  *See* Schaffer Decl. ¶ 7.  Therefore, numerosity is clearly established in both classes.

> ## 2.    Commonality

Rule 23(a)(2)'s commonality requirement is met where a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Romero*, 2012 WL 1514810, at *17 (*citing Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("A plaintiff may meet his burden as to commonality by showing that the class members' grievances share a common question of law or of fact.") (citations and internal quotation marks omitted).  A single common question of law or fact will suffice. *Marisol A.*, 126 F.3d at 376; *see Garcia v. Pancho Villa's of Huntington Vil., Inc.*, No. 09 Civ. 486 (ETB), 2011 WL 6287932, at *4 (E.D.N.Y. Dec. 15, 2011) ("[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members.") (citations omitted); *Spicer*, 269 F.R.D. at 337 (stating that commonality is satisfied "if the class shares even one common question of law or fact") (citations omitted).

"[F]actual differences among the claims of the class members will not defeat certification."  *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *see Whitehorn*, 275 F.R.D. at 199 (holding that commonality was established where class members at defendant's three restaurants questioned  identical pay policies and tip-handling practices, and stating that "the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement"); *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality.")

- 14 -

(internal quotation marks omitted, alteration in original); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted).

The commonality requirement is satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Daniels*, 198 F.R.D. at 417; *see also Marisol A.*, 126 F.3d at 376-77. Moreover, commonality is not defeated solely because class members worked at separate locations or businesses, when the establishments are jointly owned and operated by defendants. *See Pancho Villa's*, 2011 WL 6287932, at *4 (finding that commonality was demonstrated amongst class members at defendants' three separate restaurants were there was "common ownership among the three restaurants.").

Here, the claims of Plaintiffs and the members of the Rule 23 Classes arise from a common wrong: Defendants failure to pay employees their lawfully earned wages. In that regard, the questions of law and fact common to all members of the Rule 23 Classes include:

- Whether Defendants accurately recorded and reported the time class members worked;

- Whether Defendants compensated class members for all of the hours they worked in accordance with the NYLL;

- Whether Defendants paid class members premium overtime compensation – at 1.5 times their regular hourly rate – for all hours worked in excess of 40 per week;

- Whether Defendants paid class members an additional hour of pay at the full minimum hourly wage rate for each day in which their spread of hours exceeds ten hours.

- Whether Defendants satisfied the requirements by which they could pay a reduced minimum wage (tipped employees only);

- Whether Defendants paid the appropriate minimum wage under the NYLL (tipped employees only); and

- ▪ Whether Defendants unlawfully retained a portion of gratuities collected at private events in violation of NYLL § 196-d (tipped employees only).

Since answers to these common questions are central to the class claims, and will universally resolve liability issues for all respective class members, they are capable of classwide resolution. *See Romero*, 2012 WL 1514810, at *18.

Commonality of issues with respect to the Rule 23 Classes is evident. The harm that the Named Plaintiffs have suffered in this case – namely that they were not paid in accordance with the NYLL – is the same harm suffered by each and every class member, regardless of any differences among class members' damages or other individual issues. Therefore, Plaintiffs have satisfied the commonality requirement. *See, e.g., Shahriar*, 659 F.3d at 252 (commonality satisfied where plaintiffs established that class members were subject to the same tipping and spread-of-hours policies); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *2 (S.D.N.Y. Dec. 13, 2011) (commonality satisfied where restaurant workers raised common overtime, tip misappropriation, and other wage and hour claims).

### 3. Typicality

Rule 23(a)(3) "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Romero*, 2012 WL 1514810, at *16 (*quoting Marisol A.*, 126 F.3d at 376). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337 (*quoting Marisol A.*, 126 F.3d at 377). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also Whitehorn*, 275 F.R.D. at 199 ("[D]ifferences among the Plaintiffs as to the number of hours

worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled, but do not defeat typicality for Rule 23 purposes.") (citations and internal quotation marks omitted).  Rather, the claims of the named plaintiff and the class "only need to share the same essential characteristics, and need not be identical."  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted); *see also Pancho Villa's*, 2011 WL 6287932, at *5 (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme, and their claims are all based on the same course of events and legal theory") (citations omitted); *Spicer*, 269 F.R.D. at 337 ("[T]ypicality does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.") (*quoting Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)); *Iglesias-Mendoza*, 239 F.R.D. at 371 ("As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.") (citations omitted). Accordingly, the typicality requirement is not "highly demanding." *Id.*

In this case, the Named Plaintiffs' claims are typical of the claims of the Rule 23 Classes they seek to represent, and are based on the same legal theory – that Defendants failed to pay them in accordance with the NYLL.  All members of the Rule 23 Classes were employed by Defendants to provide labor as tipped, front of house employees (waiters/servers, bussers, runners, bartenders, barbacks, etc.) and/or non-tipped, back of house employees (cooks, food preparers, kitchen workers, etc.).  In the course of their employment with Defendants, the Named Plaintiffs and putative class

- 17 -

members were all denied wages that they were legally entitled to receive, including overtime compensation, spread-of hours pay, minimum wage, and gratuities.  Accordingly, typicality is satisfied.

### 4.   Adequacy

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met.  *Shahriar*, 659 F.3d at 253.  "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."  *Spicer*, 269 F.R.D. at 337 (citation omitted).  Moreover, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Matheson*, 2011 WL 6402303, at *2.

Here, the Named Plaintiffs have demonstrated their genuine willingness and ability to act as class representatives by appearing for depositions and providing discovery and declarations. *See* Schaffer Decl. ¶¶ 6, 9.  In addition, since the Named Plaintiffs were subject to the same common policies and practices as all other members of the Rule 23 Classes, the same legal arguments and strategies will be used to vindicate their claims.  *See Whitehorn*, 275 F.R.D. at 200 (finding adequacy where "Plaintiffs seek recovery stemming from the same unlawful conduct allegedly perpetrated by Defendants").  As a result, given that the Named Plaintiffs' interests are closely aligned with the members of the Rule 23 Classes, and are not antagonistic or at odds with the interests of absent class members, the Named Plaintiffs are adequate Class Representatives.  *See O'Dell v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (finding that the plaintiffs satisfied Fed. R. Civ. P. 23(a)(4) "because Plaintiffs' interests [were] not antagonistic or at odds with class members");

- 18 -

*see also Pancho Villa's*, 2011 WL 6287932, at *6 (rejecting claim that class representatives were inadequate because they had been terminated by Defendants for cause).

In addition, Plaintiffs are represented by counsel who "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions." *See Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 1890381, at *2 (S.D.N.Y. March 12, 2012); *Mattheson*, 2011 WL 6268216, at *3; *O'Dell*, 2009 WL 6583142, at *2; *see also, e.g., Salomon v. Adderley Indus., Inc.*, No. 11 Civ. 6043 (PAC), 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) (granting plaintiffs' motion for collective action certification); *Karic v. Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) (same). Therefore, Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation.

### B.   Class Certification Under Rule 23(b)(3) Is Appropriate.

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Romero*, 2012 WL 1514810, at *16. Rule 23(b)(3), the provision that Plaintiffs move under here, is satisfied where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.   Common Questions Of Law And Fact Predominate.

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individual proof." *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2012 WL 1450553, at *23 (S.D.N.Y. Apr. 23, 2012) (*quoting Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Courts have found that a plaintiff's satisfaction of the typicality requirement of Rule 23(a) is perhaps the best indicator that Rule 23(b)(3) has been satisfied.  *See, e.g., Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (stating that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement"); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *8 (S.D.N.Y. Jan. 12, 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a)].").

The important predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa CheckiMasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:23 (6th ed. 2010) (stating that if adjudicating the class representatives' claims "will effectively establish a right of recovery for all other class members without the need to inquire into each individual's circumstances" or "if the same evidence will permit each class member to make a prima facie showing," then the predominance test is met).  In fact, "numerous courts have found that wage claims are especially suited to class litigation – perhaps 'the most perfect questions for class treatment' – despite differences in hours worked, wages paid, and wages due." *Ramos v. Simplexgrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) (listing cases) (*quoting Iglesias-Mendoza*, 239 F.R.D. at 373); *see also, e.g., Pancho Villa's*, 2011 WL 6287932, at *6 ("Although individual questions as to damages may exist, common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.") (citation and internal quotation marks omitted) (*citing Whitehorn*, 275 F.R.D. at 200).

Here, if Plaintiffs' show that Defendants' did not pay employees overtime at 1.5 times their regular hourly rate for all hours worked in excess of 40 per week and/or did not pay employees an additional hour at the full minimum wage rate for each day in which their spread of hours exceeded ten hours, they will establish class-wide liability.  Tipped employees can also establish class-wide liability if they prove that Defendants failed to satisfy the requirements by which they could take advantage of paying a reduced minimum wage under the NYLL, did not record/report all of the hours they worked, and/or unlawfully retained gratuities/service charges in violation of NYLL § 196-d.  The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance.  *See Pancho Villa's*, 2011 WL 6287932, at *6 ("[L]ike commonality, predominance is not defeated by the fact that potential plaintiffs worked at different restaurant locations and in different categories of ... positions where ... the pay policy was identical.") (*citing Whitehorn*, 275 F.R.D. at 200).   Accordingly, the predominance requirement is satisfied as to both Rule 23 Classes.

### 2.    A Class Action Is The Superior Mechanism.

Factors relevant to the superiority requirement include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy each of these factors.

Courts routinely find superiority where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery.  *See e.g., Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM),

2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue); *Torres*, 2006 WL 2819730, at *16 (finding that a class action was superior to other methods where the amount of recovery was small in relation to litigation costs); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS), 2005 WL 106895, at *5 (S.D.N.Y. Jan. 19, 2005) (ruling that a class action is superior where individual potential class members claims are small and, as a result, there is little incentive for the putative class members to bring individual suits). Moreover, "[c]ourts in this Circuit … have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Spicer*, 269 F.R.D. at 338 (*citing Trinidad*, 2007 WL 103073, at *8-9) (collecting cases); *see Pancho Villa's*, 2011 WL 6287932, at *7 ("[A] class action is superior to other available methods, given that the [New York Labor Law] claims are nearly identical to the FLSA claims, which will be tried collectively in this Court.") (citations and internal quotation marks omitted). Here, FLSA notices have already been sent, and over 26 individuals have joined the case. *See* Schaffer Decl. ¶ 7.

In the instant matter, class certification will permit the resolution of over 400 tipped employees' individual claims and over 150 non-tipped employees' individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits and saving an enormous amount of time and expense. Additionally, since the damages suffered by certain members of the Rule 23 Classes, although substantial in the aggregate, are small in relation to the extraordinary expense and burden of individual litigation, a host of individuals will lose any practical means for obtaining either injunctive relief or damages for Defendants' illegal conduct without certification. Moreover, opt-out classes are commonly granted where, as here, class

members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad*, 2007 WL 103073, at *4 (internal quotation marks omitted); *see Whitehorn*, 275 F.R.D. at 200 ("Courts routinely hold that a class action is superior where … many potential class members are currently employed by Defendant."); *Torres*, 2006 WL 2819730, at *16 (finding that the fact that some class members are currently employed by defendants further justifies class certification as these individuals would be unlikely to bring a claim against their employer for fear of retaliation).  Therefore, since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Rule 23 Classes.  *Myers*, 624 F.3d at 547.

### C.   <u>Plaintiffs' Counsel Should Be Appointed As Class Counsel.</u>

With respect to appointment of class counsel, Rule 23(g) requires that an attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class, and that in appointing class counsel, the Court must consider the following: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(A).

Plaintiffs' counsel, Fitapelli & Schaffer, LLP ("F&S"), meets all relevant criteria under Rule 23(g).  F&S is highly experienced in complex wage and hour litigation in general, and specifically litigation relating to the rights of New York City food service employees.  *See* Schaffer Decl. ¶¶ 10-13.  Additionally, Plaintiffs' counsel is willing and able to commit the necessary

resources to represent the Rule 23 Classes, and has already done substantial work identifying, investigating, and litigating Plaintiffs' claims.  *See Id.* ¶¶ 4-9, 14.  Courts in this district have found F&S to be adequate class counsel in wage and hour class actions in similar cases.  *See Lovaglio*, 2012 WL 1890381, at *2 (appointing F&S as Class Counsel because they "did substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims, have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Matheson*, 2011 WL 6268216, at *3 (appointing F&S as class counsel based on their "substantial experience prosecuting and settling employment class actions, including wage and hour class actions"); *O'Dell*, 2009 WL 6583142, at *2 (appointing F&S as class counsel and finding them to be "experienced and well-qualified employment lawyers and class action lawyers" with "particular expertise in prosecuting and settling wage and hour class actions").  Consequently, the Rule 23(g) requirements are satisfied by the appointment of Plaintiffs' counsel as class counsel.

### D.     The Proposed Class Notices Are Appropriate.

Pursuant to Rule 23(c), the Court must:

> [D]irect to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  The proposed Class Notices, which are attached to the Schaffer Declaration as **Exhibit Y**, fully comply with the requirements of Rule 23(c)(2)(B), and should therefore be approved.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) certify the Rule 23 Classes under Fed. R. Civ. P. 23; (2) designate Plaintiffs' counsel as Class Counsel; and (3) approve the proposed Class Notices.

Dated: New York, New York
      June 4, 2012

Respectfully submitted,

/s/ Brian Schaffer
Brian S. Schaffer (BS 7548)

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JF 9058)
Brian S. Schaffer (BS 7548)
Eric J. Gitig (EG 7399)
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and*
*the Putative Classes*