**PINO & ASSOCIATES, LLP**
Rudolph V. Pino, Jr. (RP0023)
John M. Socolow (JS5350)
50 Main Street
White Plains, New York 10606
Tel.: (914) 946-0600

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CRISOFORO TIRO, LEONARDO CORTES, ENRIQUE HERNANDEZ, and HUMBERTO CAMPOS LARA**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PUBLIC HOUSE INVESTMENTS, LLC, PUBLIC HOUSE NYC, LLC, PUBLIC HOUSE MGMT NYC, LLC, BUTTERFIELD 8 NYC, LLC, MARTELL'S NYC, LLC, BLACK FINN, NYC, LLC, CHRIS COCOZZIELLO, BRIAN HARRINGTON, GARY CARDI and FRANK FALESTO**, <br><br> Defendants. | **11 CV 7679 (CM)** |
| **RODOLFO TEJADA VILLA and ENRIQUE HERNANDEZ**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PUBLIC HOUSE INVESTMENTS, LLC, PUBLIC HOUSE NYC, LLC, PUBLIC HOUSE MGMT NYC, LLC, BUTTERFIELD 8 NYC, LLC, MARTELL'S NYC, LLC, BLACK FINN NYC, LLC, CHRIS COCOZZIELLO, BRIAN HARRINGTON, GARY CARDI and FRANK FALESTO**, <br><br> Defendants. | **11 CV 8249 (CM)** |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF STATE LAW CLAIMS PURSUANT TO FED. R. CIV. P. 23

**TABLE OF CONTENTS**

Table of Contents ...............................................................................................i, ii

Table of Authorities .......................................................................................iii, iv

BACKGROUND ...................................................................................................1

I.      RULE 23 CLASS CERTIFICATION SHOULD BE DENIED BECAUSE
        PLAINTIFFS  HAVE NOT MET THEIR BURDEN OF PROOF TO
        OBTAIN CLASS CERTIFICATION AGAINST ALL OF THE NAMED
        DEFENDANTS .. ........................................................................................2

II.     FACTUAL BACKGROUND ....................................................................4

        A.  PHI .....................................................................................................4

            1.  PHI's Function ...........................................................................4

            2.  PHI Does Not Own, Operate or Control Any Restaurants, and Has
                No Employment Relationship With the Named Plaintiffs and the
                Putative Class Members ................................................................5

        B.  Harrington ...........................................................................................6

        C.  Cardi ....................................................................................................6

        D.  Public House Mgmt NYC, LLC ............................................................7

        E.  The NYC Restaurants...........................................................................7

            1.  Coco: Public House NYC, Butterfield 8 NYC and Black
                Finn/Tammany Hall .....................................................................7

            2.  Falesto: Wicker Park ....................................................................8

III.    ARGUMENT .............................................................................................9

        A.  CLASS CERTIFICATION SHOULD BE DENIED..............................9

            1.  DEFENDANTS DO NOT OWN, OPERATE AND CONTROL A
                "SINGLE INTEGRATED ENTERPRISE," AND DO NOT JOINTLY
                EMPLOY THE NAMED PLAINTIFFS OR PUTATIVE
                CLASS MEMBERS.......................................................................9

2.  CLASS CERTIFICATION IS IMPROPER AS TO CLAIMS
    AGAINST PHI, PUBLIC HOUSE MGMT NYC, LLC,
    HARRINGTON AND CARDI ..........................................................16

3.  CLASS CERTIFICATION MUST BE DENIED BECAUSE
    PLAINTIFFS DO NOT MEET ALL OF THE RULE 23
    REQUIREMENTS ........................................................................18

    a.  Plaintiffs Do Not Satisfy All of the Requirements of
        Rule 23(a) ...........................................................................18

        i.   Numerosity.................................................................19

        ii.  Commonality...............................................................19

        iii. Typicality ...................................................................21

        iv.  Adequacy ...................................................................22

    b.  Class Certification Under Rule 23(b)(3) Is Not Appropriate ......23

        i.   Common Questions of Law and Fact Do Not Predominate
             Over Individual Claims.............................................23

        ii.  A Class Action is Not the Superior Mechanism For
             Resolution of Plaintiffs' Claims.............................24

        iii. Appointment of Class Counsel is Unnecessary ....................24

        iv.  The Proposed Class Notices are Inappropriate and
             Unnecessary ..............................................................24

CONCLUSION...................................................................................25

## TABLE OF AUTHORITIES

**Federal Cases**..........................................................................................................**Page Number**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 614 (1997) ..........................................23

*Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731 (5th Cir. 1986) ..........15

*Duffy v. Drake Beam Morin*
    No. 96-5606 (MBM), 1998 WL 252063 (S.D.N.Y. 1998) ..................................11

*Evans v. McDonald's Corp.*, 936 F. 2d 1087 (10th Cir. 1991)...................................15

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)......................................19, 21

*Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039 (W.D.N.Y. 1997).................4, 14

*Guippone v. BH S&B Holdings LLC*,
    No. 09 Civ. 1029 (CM), 2011 WL 1345051 (S.D.N.Y. March 30, 2011)...........18

*Herman v. RSR Sec. Servs. Ltd.*, 172 F. 3d 132 (2d Cir. 1999) ................................3, 17

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .........................2

*Jackson v. Nat'l Football League*, 1994 WL 282105
    No. 92-7012 (RPP), (S.D.N.Y. June 21, 1994)...................................................4, 14, 15

*Kellett v. Glaxo Enterprises, Inc.*
    No. 91-6237 (LMM), 1994 WL 669975 (S.D.N.Y. 1994) .................................11

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010)...................................................2

*N.L.R.B. v. Browning-Ferris*, 691 F.2d 1117 (3d Cir. 1982)....................................15

*Oakley v. Verizon Communications, Inc.*
    No. 09-Civ 9175 (CM), 2012 WL 335657 (S.D.N.Y. February 1, 2012) ..........2

*Paz v. Piedra*
    No. 09-3977 (LAK), 2012 WL 121103 (S.D.N.Y. January 12, 2012) ...............3, 17

*Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54 (D.D.C. 1996) ...............................11

*Romero v. H.B. Automotive Group, Inc.*
    No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012)..................2, 18, 19, 22

*Shim v. Millennium Group*
    No. 08-4022 (FB) 2010 WL 409949 (S.D.N.Y. January 27, 2010)....................3

*Spicer v. Pier Sixty, LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) .....................................22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................19, 20, 21, 23


**New York State Cases**

*Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008) .................................................21


**Statutes**

New York Labor Law ("NYLL") §196-d .................................................................21


**Rules & Regulations**

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Fed. R. Civ. P. Rule 23(a) ....................................................................................19, 23

Fed. R. Civ. P. Rule 23(b) ....................................................................................23, 24


**Other Authorities**

http://open.nysenate.gov/legislation/bill/S6299-2011 ...............................................21

Defendants, PUBLIC HOUSE INVESTMENTS, LLC, PUBLIC HOUSE NYC, LLC, PUBLIC HOUSE MGMT NYC, LLC, BUTTERFIELD 8 NYC, LLC, MARTELL'S NYC, LLC, BLACK FINN NYC, LLC, CHRIS COCO (s/h/a CHRIS COCOZZIELLO), BRIAN HARRINGTON, GARY CARDI, and FRANK FALESTO (collectively, "Defendants") submit this memorandum in opposition to the Named Plaintiffs' motion for class certification of New York state wage and hour claims pursuant to Fed. R. Civ. P. 23 (the "Motion").

## BACKGROUND

In these consolidated cases, Plaintiffs seek to impose liability under the New York Labor Law ("NYLL") -- on a class basis -- on *all* Defendants, even though certain of the Defendants: (i) never employed any of the Named Plaintiffs or the putative class members; and (ii) never owned, operated or controlled Public House NYC ("PH-NYC"), Butterfield 8 NYC ("B8-NYC"), Tammany Hall (formerly Black Finn) ("BF-NYC"), and/or Wicker Park (which closed on or about November 7, 2011) (collectively, the "NYC Restaurants"), where the Named Plaintiffs and the putative class members were and/or are employed.  In doing so, Plaintiffs base their claims on the following erroneous assertions.

First, Plaintiffs incorrectly claim that *all* of the named Defendants jointly own, operate and control a "single integrated enterprise" that *jointly* employs the Named Plaintiffs and the putative class members.

Second, Plaintiffs incorrectly claim that the so-called "single integrated enterprise" is "centrally controlled" by defendant Public House Investments, LLC ("PHI"), and that PHI is owned and operated by defendants Chris Coco ("Coco"), Brian Harrington ("Harrington"), Gary Cardi ("Cardi"), and Frank Falesto ("Falesto") (collectively, the "Individual Defendants").

Third, Plaintiffs incorrectly claim that PHI "owns, operates and controls over 15 bars and restaurants across country."

1

Fourth, Plaintiffs incorrectly claim that the Defendants had a policy and practice of violating New York State wage and hour laws.

Defendants deny liability.  Regardless of the merits of Plaintiffs' claims, for the reasons set forth herein and in the accompanying declarations of Harrington, Coco, Falesto, Cardi, Lindsay Paris ("Paris"), and Rudolph V. Pino, Jr. ("Pino"), Plaintiffs' Motion should be denied.

## I.   RULE 23 CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROOF TO OBTAIN CLASS CERTIFICATION AGAINST ALL OF THE NAMED DEFENDANTS

"A district court must conduct a "rigorous analysis" to determine whether all of the requirements of Fed. R. Civ. P. 23 have been met." *Oakley v. Verizon Communications, Inc.*, No. 09-Civ. 9175 (CM), 2012 WL 335657 at *12 (S.D.N.Y. February 1, 2012)(McMahon, J.); *Romero v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810 at *17 (S.D.N.Y. May 1, 2012) (McMahon, J). "In the Second Circuit, factual findings necessary to this determination are made under the preponderance of the evidence standard." *Id*. "The party seeking certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Id*., quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Central to the Plaintiffs' argument in support of class certification is their claim that the Defendants are part of a single integrated enterprise that: (i) is centrally controlled by Public House Investments, LLC; and (ii) has jointly employed the Named Plaintiffs and the putative members of the Rule 23 Classes at all times. The Defendants vigorously dispute that they operate as a single integrated enterprise. The Court must determine the existence or inexistence of a single integrated enterprise at the certification stage because that factual determination is central to the Plaintiffs' argument and necessary to the Rule 23 analysis. *Id*.; s*ee also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Application of the legal standards of Rule

23 to the facts as found is within the discretion of the certifying court and "this discretion has historically been exercised in favor of certification in a close call." *Id*. However, this case is not a "close call."

Here, Plaintiffs base their argument in support of the existence of a single integrated enterprise on unconnected snippets from the Internet, and rumors and hearsay from present and former employees of the NYC Restaurants. In stark contrast, the evidence proffered by Defendants proves that the Defendants do not operate as a single integrated enterprise, nor do they jointly employ the Named Plaintiffs or putative members of the Rule 23 Classes. *See* Factual Background, *infra*.

In an FLSA context, Second Circuit courts use the "economic reality test" to determine the existence of a joint-employer relationship. *Herman v. RSR Sec. Servs. Ltd.*, 172 F. 3d 132, 139 (2d Cir. 1999); *Paz v. Piedra,* No. 09-3977 (LAK), 2012 WL 121103 at *7 (S.D.N.Y. January 12, 2012); *Shim v. Millennium Group*, No. 08-4022 (FB), 2010 WL 409949 at *2 (S.D.N.Y. January 27, 2010). The non-exclusive, relevant factors regarding the existence of a joint-employer relationship include whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules, or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id*. The Second Circuit has held that "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye toward the economic reality presented by the facts of each case." *Shim*, 2010 WL 409949 at *2, citing *Herman*, 172 F. 3d at 139.

Plaintiffs have failed to demonstrate that the named Defendants jointly exercised formal or functional control over the employees of the other. *See Paz*, 2012 WL 409949 at *8. Given the absence of a joint employer relationship, it follows that each Defendant can only be held liable to

the extent of the FLSA and NYLL violations it committed, if at all.  In any event, class

certification should be denied. *Id.*[1]

## II.   FACTUAL BACKGROUND

### A.   PHI

PHI is a Pennsylvania limited liability corporation.   Harrington, a resident of

Pennsylvania, is the sole member and sole owner of PHI.  *See* Declaration of Brian Harrington

("Harrington Decl.") at ¶¶ 2-3.  PHI is not the corporate parent of any of the NYC Restaurants.

*See* Harrington Decl. at ¶¶ 25, 30, 35 and 42.

#### 1.   PHI's Function

PHI provides administrative services and promotional advice to restaurants, including the

NYC Restaurants.  PHI also has provided promotional advice to other restaurants which were

owned, operated and controlled by entities ***other than*** the separate single-member LLC's which

the Individual Defendants own, operate and control.  *See* Harrington Decl. at ¶¶ 13, 18.

PHI was formed to provide administrative and promotional services to restaurants and to

create a corporate entity which could obtain, on a cost-effective basis, group health insurance and

other benefits to the owners, General Managers and certain other key employees of the

restaurants it serves.  *See* Harrington Decl. at ¶¶ 18, 20.

In addition to providing health insurance and other benefits, PHI provides accounting and

payroll processing services to the NYC Restaurants, and to other restaurants owned, operated

and controlled by the Individual Defendants through other separate, single member LLC's which

---

[1] In an NLRB context, courts in the Second Circuit consider the following factors to determine if
multiple defendants operate as a single integrated enterprise: "(1) interrelated operations, (2)
common management, (3) centralized control of labor relations, and (4) common ownership."
*Jackson v. Nat'l Football League*, 1994 WL 282105 at * 4, No. 92-7012 (RPP)(S.D.N.Y. June
21, 1994); *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039 (W.D.N.Y. 1997). Under either
test, class certification should be denied.

they have formed.  In this regard, PHI's function is purely ministerial; the pay stubs provided to each employee clearly indicate that the individual LLC's which own, operate and control the NYC Restaurants -- **not PHI** -- are paying the wages.   *See* Harrington Decl. at ¶¶ 18-19, 21; Declaration of Lindsay Paris ("Paris Decl.") at ¶¶ 7-8.

### 2.     PHI Does Not Own, Operate or Control Any Restaurants, and Has No Employment Relationship With the Named Plaintiffs and the Putative Class Members

PHI is a management company that provides management and promotional advice, benefits and payroll services, and other administrative services to the restaurant industry, including BF-NYC; Butterfield 8 NYC ("B8-NYC"); PH-NYC; and Wicker Park, for a management fee.  PHI has never owned, operated or controlled any of the NYC Restaurants.  It does not own, operate or control any other bars or restaurants.  And it does not hold any New York State Liquor Licenses.  As such, there are no "Public House Investments restaurants."  *See* Harrington Decl. at ¶¶ 13, 18, 24, 29, 34, 41.

PHI has never employed or paid salaries to any of the Named Plaintiffs or to the putative class members.  PHI does not have the power to hire and fire, and gives no direction to the NYC Restaurants regarding hiring and firing, employees in the NYC Restaurants, including the Named Plaintiffs or the putative class members.  *See* Harrington Decl. at ¶¶ 21-24, 28-29, 33-34, 38, 41, 45.

PHI has never had the power to supervise and control, and gives no direction to the NYC Restaurants regarding supervision and control of, the work schedules and conditions of employment in the NYC Restaurants, including those of the Named Plaintiffs and the putative class members.  *Id.*

PHI has never had the power to determine the rate and method of payment, and gives no direction to the NYC Restaurants regarding the rate and method of employment, of employees in the NYC Restaurants, including the Named Plaintiffs and the putative class members. *Id*.

**B.**     **Harrington**

Harrington has never owned, operated or controlled any of the NYC Restaurants. Harrington has never employed or paid salaries to any of the Named Plaintiffs or to the putative class members. Harrington does not have the power to hire and fire, and gives no direction to the NYC Restaurants regarding hiring and firing, employees in the NYC Restaurants. *Id*.

Harrington has never had the power to supervise and control, and gives no direction to the NYC Restaurants regarding supervision and control of, the work schedules and conditions of employment in the NYC Restaurants, including those of the Named Plaintiffs and the putative class members. *Id*.

Harrington has never had the power to determine the rate and method of payment, and gives no direction to the NYC Restaurants regarding the rate and method of payment, of employees in the NYC Restaurants, including the Named Plaintiffs and the putative class members. *Id*.

**C.**     **Cardi**

Cardi is a resident of Pennsylvania. Cardi is the sole member and sole owner of Public House Logan Square in Philadelphia, Pennsylvania. Cardi is also an employee of PHI. Cardi has never owned, operated or controlled any of the NYC Restaurants. Cardi has never employed or paid salaries to any of the Named Plaintiffs or to the putative class members. Cardi does not have the power to hire and fire, and gives no direction to the NYC Restaurants regarding hiring and firing, employees in the NYC Restaurants. *See* Declaration of Gary Cardi ("Cardi Decl.") at ¶¶ 2, 5-9.

Cardi has never had the power to supervise and control, and gives no direction to the NYC Restaurants regarding supervision and control of, the work schedules and conditions of employment in the NYC Restaurants, including those of the Named Plaintiffs and the putative class members. *See* Cardi Decl. at ¶¶ 6-8.

Cardi has never had the power to determine the rate and method of payment, and gives no direction to the NYC Restaurants regarding the rate and method of payment, of employees in the NYC Restaurants, including the Named Plaintiffs and the putative class members. *Id*.

**D.    Public House Mgmt NYC, LLC**

Public House Mgmt NYC, LLC is a New York limited liability corporation.  It was formed by Coco, who is its sole member, in 2008, as a vehicle to track expenses and receive consultant fees. *See* Declaration of Chris Coco ("Coco Decl.") at ¶¶ 5, 43-44.  This company has not been active since 2010. *Id*. at ¶ 44.   It had no employees. *Id*.  It never operated or managed any of the NYC Restaurants. *Id*.  And it has never hired, fired, managed, supervised, disciplined, instructed or controlled any employees of any of the NYC Restaurants. *Id*.

**E.    The NYC Restaurants**

**1.    Coco: Public House NYC, Butterfield 8 NYC and Black Finn/Tammany Hall**

Coco, a resident of New York, is the sole member and sole owner of the following New York limited liability corporations: (i) Black Finn NYC, LLC, which owns, operates and controls BF-NYC; (ii) Butterfield 8 NYC, LLC, which owns, operates and controls B8-NYC; and (iii) Public House NYC, LLC, which owns, operates and controls PH-NYC. *See* Coco Decl. at ¶¶ 2-4, 17, 20, 23-25, 31, 37.

At all relevant times, BF-NYC, B8-NYC and PH-NYC have each had their own separate General Manager who was responsible for implementation of employment-related decisions, policies, practices and shift schedules.  Each of these restaurants: (i) has its own separate budget

for advertising; (ii) purchases its own liability insurance; (iii) contracts separately with vendors and suppliers; and *(iv) makes its own decisions regarding the manner in which tipped and hourly employees are to be compensated.* *See* Coco Decl. at ¶¶ 29-30, 35-36, 41-42.

Coco has never owned, operated or controlled Wicker Park.  Coco has never paid any salary to any employee of Wicker Park for work performed at Wicker Park.  Coco has never had the power to hire and fire employees of Wicker Park.  Coco has never given direction to Wicker Park regarding hiring and firing of employees.  *See* Coco Decl. at ¶¶ 22, 45.  Coco has never had the power to supervise and control the work schedules and conditions of employment of employees of Wicker Park.  Coco has never given direction to Wicker Park regarding supervision and control of the work schedules and conditions of employment of tipped and hourly employees in Wicker Park.  *Id.*  Coco has never had the power to determine the rate and method of payment of employees of Wicker Park.  Coco has given no direction to Wicker Park regarding the rate and method of payment of tipped and hourly employees of Wicker Park.  *Id.*

### 2.    Falesto: Wicker Park

Falesto, a resident of New Jersey, is the sole member and sole owner of Martell's NYC, LLC, a New York limited liability corporation which owned, operated and controlled Wicker Park.  *See* Declaration of Frank Falesto ("Falesto Decl.") at ¶¶ 2-3.  Wicker Park closed on or about November 7, 2011.  *See* Falesto Decl. at ¶ 13.

At all relevant times, Wicker Park had its own separate General Manager who was responsible for implementation of employment-related decisions, policies, practices and shift schedules.  Wicker Park: (i) had its own separate budget for advertising; (ii) purchased its own liability insurance; (iii) contracted separately with vendors and suppliers; and *(iv) made its own decisions regarding the manner in which tipped and hourly employees are to be compensated.* *See* Falesto Decl. at ¶¶ 17-19.

8

Falesto has never owned, operated or controlled BF-NYC, B8-NYC or PH-NYC.  Falesto has never paid any salary to any employee of BF-NYC, B8-NYC or PH-NYC for work performed at any of those restaurants.  Falesto has never had the power to hire and fire employees of BF-NYC, B8-NYC or PH-NYC.  Falesto has never given direction to BF-NYC, B8-NYC or PH-NYC regarding hiring and firing of employees.  *See* Falesto Decl. at ¶¶ 20-22.  Falesto has never had the power to supervise and control the work schedules and conditions of employment of employees of BF-NYC, B8-NYC or PH-NYC.  Falesto has never given direction to BF-NYC, B8-NYC or PH-NYC regarding supervision and control of the work schedules and conditions of employment of tipped and hourly employees in those restaurants.  *Id*.  Falesto has never had the power to determine the rate and method of payment of employees of BF-NYC, B8-NYC or PH-NYC.  Falesto has given no direction to BF-NYC, B8-NYC or PH-NYC regarding the rate and method of payment of tipped and hourly employees of those restaurants.  *Id.*

## III.   ARGUMENT

### A.   CLASS CERTIFICATION SHOULD BE DENIED

#### 1.   DEFENDANTS DO NOT OWN, OPERATE AND CONTROL A "SINGLE INTEGRATED ENTERPRISE," AND DO NOT JOINTLY EMPLOY THE NAMED PLAINTIFFS OR PUTATIVE CLASS MEMBERS

Plaintiffs have scoured the Internet and, in a tortured interpretation of the information that they have found, grossly mischaracterized the Defendants as a "single integrated enterprise" that jointly employs the Named Plaintiffs and the putative class members.  Nothing could be further from the truth.

First, the statement that Harrington -- the sole member and sole owner of PHI -- made during a 2009 radio interview (Plaintiffs' Exhibit B) is true and entirely consistent with his role as a promoter for the restaurants that are owned, operated, and controlled by PHI's clients.  Harrington's statement is akin to an advertisement designed to drive as much business as

9

possible to the restaurants owned, operated and controlled by PHI's clients, because the management fees paid to PHI are a function of the amount of sales at each of those restaurants. Harrington's statement was certainly not meant as a commentary on the legal corporate structure of PHI as it relates to and amongst the NYC Restaurants.  Harrington's statement also can not change the fact that PHI is a services management company that has no partners and does not own, manage, operate, or control any of the NYC Restaurants.  *See* Harrington Decl. at ¶¶ 24-38, 41-45.

Second, Plaintiffs mischaracterize a March 21, 2007 e-mail sent by Harrington, claiming that it was addressed to "employees of the various Public House Investments restaurants."  As noted above, there are no "Public House Investments restaurants."  The primary purpose of Harrington's March 21, 2007 e-mail was to ensure that sales figures from various restaurants were reported to PHI in a uniform manner so that its controller, Lindsay Paris, could enter the data into the respective restaurant's accounting records, and prepare reports in a format that is readily understandable and usable by its clients.  *See* Paris Decl. at ¶ 10; Harrington Decl. at ¶ 48. PHI uses the reports generated by Lindsay Paris to perform its marketing and promotional functions because it is important for PHI to know the amount of sales for BF-NYC, B8-NYC, PH-NYC, and Wicker Park so that issues can be identified and addressed by its General Manager and owner. *See* Harrington Decl. at ¶ 48. PHI also uses the data obtained from these reports to prepare accounting records and to assist in preparation of year end tax returns for its clients. *See* Paris Decl. at ¶ 11; Harrington Decl. at ¶ 48.

PHI earns its fees from the restaurants it serves by providing them with an opportunity to gain "economies of scale" traditionally reserved to larger companies and corporations. These "economies of scale" are achieved by standardizing back-end processes and procedures of restaurants, *e.g.*, accounting/payroll services.  *See* Harrington Decl. at ¶ 48. This arrangement is

10

hardly uncommon, nor is it proof that PHI made the employment decisions at issue here. *See Duffy v. Drake Beam Morin*, No. 96-5606 (MBM), 1998 WL 252063 at *5 (S.D.N.Y. 1998), citing *Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54, 62-63 (D.D.C. 1996). As explained in the Harrington Decl., PHI does provide salaries and a common benefits package to the Individual Defendants, as well as to the General Managers and key employees of the NYC Restaurants. As explained in the Paris Decl., the only "practices and procedures" she oversees relate to bookkeeping, accounting, administration of benefits and preparation of daily sales reports on a monthly basis. Her role is purely ministerial. She has absolutely nothing to do with decisions relating to the manner in which tipped and hourly employees in the NYC Restaurants, or in any other bar or restaurant, are compensated. *See* Paris Decl. at ¶¶ 5-8.

These facts are not evidence of a common plan or scheme with respect to compensation of tipped and hourly employees in the NYC Restaurants and are of "low or no probative value" in determining the existence of a single integrated enterprise. *See e.g., Bell Atlantic Corp.*, 946 F. Supp. at 62-63; *Kellett v. Glaxo Enterprises, Inc.*, No. 91-6237 (LMM), 1994 WL 669975 (S.D.N.Y. 1994) (these procedures and common benefits package speak only to economies of scale…and not to proof of a single integrated enterprise).

<u>Third</u>, Plaintiffs claim -- through an affidavit submitted by former PH-NYC chef Gretchen Brinson -- that PHI held "annual, company-wide meetings, which included employees from most of the restaurants owned by Public House Investments." *See* Schaffer Decl., Ex. D.[2] ***Again, there are no restaurants owned, operated or controlled by PHI***.  Ms. Brinson was paid by PHI so she would have access to a group health insurance program.

---

[2] Defendants note that Ms. Brinson was a ***salaried employee***, not a tipped or hourly employee, who was paid by, and received benefits from, PHI.  She apparently received the FLSA Collective Action notice and chose to opt-in to that action.  Given her status as a salaried employee, Defendants submit that she has improperly opted-in to Plaintiffs' FLSA collective action.

The "company-wide" meetings were attended by the Individual Defendants, certain general managers of the restaurants owned, operated and controlled by the separate, single member LLC's formed by the Individual Defendants, Lynette Cesaro (the event coordinator at Public House NYC), Ms. Brinson, and possibly chefs from other restaurants.  These annual company-wide meetings which PHI holds in Atlantic City, New Jersey are simply face-to-face versions of the conference calls that took place only twice.  These meetings are also offered as a "perk" to the key employees in that those who attend receive an all expenses paid trip to Atlantic City.  *See* Harrington Decl. at ¶¶ 49-50.

Like Harrington's March 21, 2007 e-mail, the company-wide meetings also are irrelevant to the issues before the Court, since no discussions concerning compensation of tipped or hourly employees took place during those meetings.

Fourth, Plaintiffs mischaracterize PHI as "a single integrated enterprise that centrally operates a family of restaurants, including the four [NYC Restaurants]." ***PHI does not operate, "centrally" or otherwise, any restaurants***.  Although the www.publichouseusa.com website, *see* Schaffer Decl., Ex. F, lists and provides links to the websites of a number of different restaurants for cross-promotional purposes, ***none of those restaurants are owned, operated or controlled by PHI***.  *Id*.  Most critically, the fact that multiple restaurants are promoted on one website is not evidence of a common plan or scheme regarding the compensation of tipped and hourly employees in the NYC Restaurants.

Fifth, Plaintiffs incorrectly claim that "[i]nterrelated operations, common management, and centralized labor relations further demonstrate that Public House Investments is a single integrated enterprise."  Again, PHI does not own, operate or control the NYC Restaurants, or any other bars or restaurants.  Each of the NYC Restaurants sets its own policies and practices

regarding, among other things, the manner in which tipped and hourly employees are compensated. *See* Coco Decl. at ¶¶ 27, 29-30, 33, 35-36, 39, 41-42; Falesto Decl. at ¶¶ 19-22.

Sixth, the "Public House Investments Employee Profiles," *see* Schaffer Decl., Ex. K, are nothing more than screen shots from LinkedIn and other professional networking and social media websites.  These so-called "profiles" were posted on websites that are not controlled, authorized, maintained or sponsored by PHI or by any of the NYC Restaurants.  None of the Defendants herein have any control over the content of information which their employees might post on LinkedIn or elsewhere on the internet.  The Court well knows that the internet is full of information that is not entirely accurate.  Regardless of what some individuals may have posted, their "profiles" and posts say absolutely nothing about a common plan or scheme regarding the compensation of tipped and hourly employees in the NYC Restaurants, or in any other bar or restaurant for that matter.

Seventh, the "Employee Separation Information" form, *see* Schaffer Decl., Ex. L, is also not evidence of a common plan or scheme with respect to compensation of tipped and hourly employees at the NYC restaurants  That form was created by Lindsay Paris for the restaurants to use. *See* Paris Decl. at ¶ 9.  It is used solely to provide the managers of the NYC Restaurants with a form to record and retain in the employee's file; the reason for termination; the last date of employment; and the amount of any wages owed when an individual's employment ends. *Id.* PHI does not control or maintain the employment records of its restaurant clients.  *Paz*, 2012 WL 121103 at *7 (the fourth factor under the "economic reality test" is not met). The restaurants have the responsibility to maintain these records. *See* Paris Decl. at ¶ 8.  In any event, PHI does not hire or fire employees in any restaurants, and thus has no involvement in issues relating to "employee separation" at any of the NYC Restaurants. *Id.* (the third factor under the "economic reality test").

13

Tenth, the Plaintiffs' claim that event contracts used by the NYC Restaurants were "essentially identical" *see* Schaffer Decl., Ex. M, is probative of nothing.  The fact that each of the NYC Restaurants uses an event contract with a similar format containing the same categories of information (contact information, event information, bar package, catering package, and pricing) is hardly a surprise.  Moreover, the gratuity or service charge on the event contracts varies from restaurant to restaurant, which suggests that each of those restaurants made its own independent decisions regarding pricing of private events.

Eleventh, the fact that employees and managers "frequently worked at two or more of the [NYC Restaurants]" is common in the industry.  It is not unusual in the restaurant industry for tipped and hourly employees to work in more than one location.  *See* Coco Decl. at ¶ 55.  Employees in the NYC Restaurants often request to work additional shifts.  If extra shifts were not available in one restaurant, efforts were (and are) made to find available shifts at another restaurant.  *Id*.  That is hardly evidence of a common plan or scheme regarding the compensation of tipped and hourly employees.

As discussed above, the facts do not support Plaintiffs' "single integrated enterprise" theory, and neither does the law.  For example, in *Jackson*, *supra*, the plaintiff argued that the NFL was responsible for the acts of individual teams.  Although *Jackson* was not an FLSA or NYLL case, its analysis is applicable here, since it applies the same factors Plaintiffs rely upon in arguing the existence of a single integrated enterprise.  In applying the N.L.R.B. standard to determine whether two entities should be considered as a single employer, the Court stated that there must be "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership."  *Jackson*, 1994 WL 282105 at * 4; *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039 (W.D.N.Y. 1997).

The *Jackson* Court noted that "centralized control of labor relations is the central factor in the single employer analysis."  *Id.* at *7, citing *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir.1986); *Evans v. McDonald's Corp.*, 936 F. 2d 1087, 1090 (10th Cir. 1991); *N.L.R.B. v. Browning–Ferris,* 691 F.2d 1117, 1121 n. 1 (3d Cir. 1982).   The Court acknowledged that the NFL had "presented affidavit evidence [from current NFL President Roger Goodell] and deposition testimony that the NFL"… (i) played no role in hiring decisions made by the World League of American Football ("WLAF") and/or the individual WLAF teams; (ii) had no involvement in the hiring of head coaches, assistant coaches, general managers, players or any other employees of the WLAF and or the individual WLAF teams; (iii) had no involvement in decisions to promote, demote or terminate any officers, coaches, players or other employees of the WLAF and or the individual WLAF teams; (iv) had no control over the terms and conditions of employment; (v) did not set salary levels for WLAF officers, coaches, players, and other employees; (vi) had no involvement in any matters concerning employee discipline; and (vii) had no role in determining the benefits of employees.   Based on these facts, the Court concluded that "application of the NLRB factors could not support a reasonable conclusion that the NFL and the WLAF are a single employer."  *Id.* at *8.

In this case, only Falesto, Martell's NYC LLC, and the General Manager of Wicker Park, could control the employees of Wicker Park.  And only Coco, the respective LLC's of which he is sole owner and member, and the respective General Managers of BF-NYC, B8-NYC, and PH-NYC, can control the employees of those respective restaurants.   As the Harrington, Coco, Falesto and Cardi declarations clearly demonstrate, Defendants do not have interrelated operations, common management, centralized control of their employees, or common ownership.

In sum, none of the factors that could conceivably compel a finding that the Defendants are a single integrated enterprise exist.  Plaintiffs "single integrated enterprise" theory is simply not evidence of a common plan or scheme to violate the applicable NYLL.

### 2. CLASS CERTIFICATION IS IMPROPER AS TO CLAIMS AGAINST PHI, PUBLIC HOUSE MGMT NYC, LLC, HARRINGTON AND CARDI

The deposition testimony of the Named Plaintiffs establishes that class certification against PHI, Public House MGMT NYC, LLC, Harrington and Cardi would be improper.[3]  For example, Named Plaintiff Crisoforo Tiro testified -- mistakenly -- that PHI has "different restaurants."  *See* Pino Decl., Ex. A at 21.  Tiro did not know what Public House MGMT is.  *Id.* at 22.  Tiro testified that Harrington has not given him any direction on how to perform his job duties.  *Id.* at 27.  And Tiro did not have any personal knowledge that Cardi was the owner of PH-NYC, other than to claim that other employees (mistakenly) "used to say that [Cardi] was the owner."  *Id.* at 28.

Named Plaintiff Leonardo Cortes testified that he did not know what PHI, Public House NYC, LLC or Martell's NYC, LLC do.  *See* Pino Decl., Ex. B at 8-9.  Cortes testified that he does not know what Public House MGMT does, though he claimed -- incorrectly -- that "they have restaurants."  *Id.* at 8.  Cortes testified that Harrington "[n]ever provided him with any instruction on how to do his work, and that he did not know and had never seen Cardi.  *Id.* at 10.

Named Plaintiff Enrique Hernandez testified that he did not know what PHI, Public House MGMT and Martell's NYC, LLC are.  *See* Pino Decl., Ex. C at 9.  Hernandez testified that he had never seen or spoken to Harrington, and that he had never spoken to Cardi.  *Id.* at 11-12.  He testified that "among us workers it was mentioned that they were the owners."  *Id.*

---

[3] Excerpts from the deposition transcripts of Named Plaintiffs Crisoforo Tiro, Leonardo Cortes, Enrique Hernandez, Humberto Campos Lara and Rodolfo Tejada Villa are annexed to the accompanying Declaration of Rudolph V. Pino, Jr., Esq. ("Pino Decl.") as Exhibits A-E, respectively.

Named Plaintiff Humberto Campos Lara testified (mistakenly) that PHI "is a restaurant chain." *See* Pino Decl., Ex. D at 14.  He also testified (mistakenly) that he worked for PHI.  *Id.* at 15.  He testified that Harrington never gave him instructions about how to perform his job, and that his co-worker, Mr. Tiro, told him that Cardi was the owner of PH-NYC.  *Id.* at 20.

Named Plaintiff Rodolfo Tejada Villa testified that he "was told" (mistakenly) that PHI "owns all of the restaurants." *See* Pino Decl., Ex. E at 10.  Tejada Villa was not sure what Public House MGMT and Martell's NYC, LLC are.  And he did not know who Harrington and Cardi are. *Id.* at 14.

Under New York law, courts interpret the definition of employer consistently with the FLSA's definition of "employer." *Paz,* 2012 WL 121103 at * 5.  Under the FLSA, "[a]n employment relationship exists …when the 'economic reality' is such that the 'alleged employer possessed the power to control the workers in question.'" *Paz*, *id.* at *4, citing *Herman*, 172 F.3d at 139.  In determining whether an employer exercises control over a worker's employment, courts consider whether the alleged employer: (i) had the power to hire and fire the employees; (ii) supervised and controlled employee work schedules or conditions; (iii) determined the rate and method of payment; and (iv) maintained employment records.

There is simply no evidence of any "employment relationship" between PHI, Public House MGMT NYC, LLC, Harrington and/or Cardi, on the one hand, and the Named Plaintiffs and putative class members, on the other hand.  PHI, Public House MGMT NYC, LLC, Harrington, and Cardi have never: (i) owned, operated or controlled any of the NYC Restaurants; (ii) employed any of the Named Plaintiffs or the putative class members; (iii) had the power to hire and fire the Named Plaintiffs and the putative class members; (iv) had the power to supervise and control the work schedules and conditions of employment of the Named Plaintiffs and the putative class members; (v) had the power to determine the rate and method of payment

of the Named Plaintiffs and the putative class members; and (vi) maintained the employment records of the NYC Restaurants.  *See* Harrington Decl. at ¶¶ 10, 14-15, 21-38, 41-45; Cardi Decl. at ¶¶ 6-8; Coco Decl. at ¶ 44.

In addition, there is no evidence that the work that any of the Named Plaintiffs performed at other restaurants benefited any of the corporate defendants that did not own that restaurant. *Paz*, 2012 WL 121103 at *7.  The fact that PHI provided management, promotional advice, access to group health insurance, accounting/payroll services, and other administrative services to its restaurant clients a management fee does not constitute an employment relationship.

Plaintiffs' claims for NYLL violations are not "provable in common," let alone at all, against PHI, Public House MGMT NYC, LLC, Harrington, and Cardi.  Accordingly, and at the appropriate time, PHI, Public House MGMT NYC, LLC, Harrington, and Cardi plan to seek summary judgment.  For present purposes, Defendants respectfully submit that with respect to PHI, Public House MGMT NYC, LLC, Harrington, and Cardi, class certification must be denied. In the alternative, Defendants request that the Court "stay the giving of class notice pending the court's ruling on any motion...for summary judgment." *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029 (CM), 2011 WL 1345041 at *8 (S.D.N.Y. March 30, 2011) (McMahon, J.).

### 3.   CLASS CERTIFICATION MUST BE DENIED BECAUSE PLAINTIFFS DO NOT MEET ALL OF THE RULE 23 REQUIREMENTS

### a.   Plaintiffs Do Not Satisfy All of the Requirements of Rule 23(a)

As this Court has recently held, "[i]n order to obtain class certification under Federal Rule of Civil Procedure 23, the class proponent bears the burden of showing that *each* of the requirements of subsection 23(a) – numerosity, commonality, typicality, and adequacy of representation – is in fact satisfied." *Romero*, 2012 WL 1514810 at *16 (emphasis in original).

In analyzing the Rule 23 requirements, the Court must conduct a "rigorous analysis."  *Id.* at 17, *citing Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).

Defendants respectfully submit that upon rigorous analysis, class certification must be denied because Plaintiffs cannot demonstrate that they have satisfied ***each*** of the requirements of Fed. R. Civ. P. Rule 23(a).

### i.       Numerosity

Defendants do not contest that class lists have been produced in connection with Plaintiffs' FLSA claims, and that based on those lists alone, the numerosity requirement appears to have been satisfied with respect to both putative classes.  However, nowhere do Plaintiffs claim that each putative class is "so numerous that joinder of all members is impracticable." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).

In addition, Defendants note that lists containing the names of approximately 680 tipped and hourly employees have been produced in connection with Plaintiffs' collective action under the FLSA.  Of those, only 34 employees have filed consents to sue in the *Tiro* case, and only 19 employees have filed consents to sue in the *Tejada Villa* case.  No employees of BF-NYC have filed consents to sue in either case.

### ii.       Commonality

In support of their argument that Rule 23's commonality requirement has been satisfied, Plaintiffs make a sweeping, generalized but ultimately unsupportable assertion that the "harm that the Named Plaintiffs have suffered in this case – namely that they were not paid in accordance with the NYLL – ***is the same harm suffered by each and every class member***, regardless of any differences among class members' damages or other individual issues." *See* Plaintiffs' Memo at 23 (emphasis added).  However, none of the Named Plaintiffs' Declarations,

singularly or collectively, prove that each and every class member, in fact, suffered the same injury, which is exactly what commonality requires. *Dukes*, 131 S. Ct. at 2551.

Named Plaintiff Crisoforo Tiro worked primarily at PH-NYC, from May 21, 2007 to October 9, 2011.  He claims that he worked for *one day* at B8-NYC as a busser, and *one day* at Wicker Park as a runner, and three weeks at BF-NYC, as a food preparer.  *See* Docket No. 53, Tiro Decl. at ¶ 3.

Named Plaintiff Leonardo Cortes has worked at PH-NYC from February 26, 2008 to the present.  He claims that he worked for *one day* at Wicker Park as a busser and a barback, and *one day* at BF-NYC doing maintenance work.  *See* Docket No. 54, Cortes Decl. at ¶ 3.

Named Plaintiff Enrique Hernandez worked at PH-NYC as a busser, runner, barback and server from approximately October/November 2008 to October/November 2011, and at B8-NYC as a dishwasher from April 2009 to August 2009.  He claims that he worked at Wicker Park for *one day*.  *See* Docket No. 55, Hernandez Decl. at ¶ 3.

Named Plaintiff Humberto Campos Lara worked as a runner at PH-NYC from December 6, 2010 to November 15, 2011.  *See* Docket No. 56, Lara Decl. at ¶ 3.  He does not claim to have performed work at any of the other NYC Restaurants.

Named Plaintiff Rodolfo Tejada Villa worked as a food preparer and cook at PH-NYC from November 21, 2010 to December 2011.  He claims that he worked as a food preparer and cook at Wicker Park, perhaps for one day (there appears to be either a mistake or missing text from this declaration, which was translated from Spanish to English).  *See* Docket No. 57, Tejada Villa Decl. at ¶ 3.

What each of the Named Plaintiffs fails to state (and setting aside the fact that the "maintenance work" performed by Named Plaintiff Cortes does not even fall within the

definition of either proposed class) is whether, and how, each of them, as well as the putative

class members, suffered the ***same injury*** due to alleged NYLL violations.

A review of the Named Plaintiffs' "proof" does not point to any evidence that there was a

common plan or scheme, ***in place at all of the NYC Restaurants***, to deny the Named Plaintiffs

and the putative class members overtime pay, spread-of hours pay, minimum wages or tips from

private events.  In addition, none of the Named Plaintiffs claim that tips from private events were

misappropriated by any of the NYC Restaurants other than Public House NYC.[4]  Plaintiffs

simply have not offered "significant proof" that the Defendants "acted under a 'general policy' to

engage in the allegedly unlawful conduct.  *Dukes*, 131 S. Ct. at 2553, quoting *Gen. Tel.*, 457 U.S.

at 159, n.15.

*Dukes* requires that the "common contention…must be of such a nature that it is capable

of classwide resolution – which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke."  131 S. Ct. at 2551.

The Supreme Court noted that "[d]issimilarities within the proposed class are what have the

potential to impede the generation of common answers."  *Id*.  Here that "potential" is realized;

the true facts reveal that the claims of the Named Plaintiffs are markedly dissimilar from most, if

not all, of the putative class, and simply do not lend themselves to classwide resolution.

**iii.**   **Typicality**

As with commonality, Plaintiffs make similar conclusory allegations with respect to

---

[4] With respect to allegedly misappropriated tips -- *i.e.*, Plaintiffs' NYLL §196-d claim -- Defendants note that pending legislation, which is likely to be enacted with retroactive effect, will moot this claim in its entirety.  In fact, the very case relied upon by Plaintiffs in support of this claim, *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008), is subject to being overruled by the pending legislation.  *See* http://open.nysenate.gov/legislation/bill/S6299-2011, last visited on June 25, 2012.

typicality. The declarations from the Named Plaintiffs show that each putative class member's claim does *not* "arise from the same course of events." *Romero*, 2012 WL 1514810 at *16.

For the most part, the Named Plaintiffs, on a combined basis, claim that they worked only a few days at restaurants other than PH-NYC. Their experiences are not typical of all of the putative class members. For example, the Named Plaintiffs offer no proof that their employment experiences were typical of waiters or bartenders. They offer no proof that *all* putative class members were *all* denied wages that they were entitled to receive. (Indeed, with respect to the FLSA claims, *no* putative class members employed at BF-NYC have opted into the lawsuit.) And they offer no proof that alleged misappropriation of tips occurred at any restaurant other than PH-NYC and thus cannot assert that *all* tipped putative class members are entitled to make a claim for unpaid tips.

Lack of typicality may be found in cases where the named plaintiff was not harmed by the conduct he alleges to have injured the class. *Spicer v. Pier Sixty, LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010). Without offering "significant proof," typicality is not satisfied.

### iv.    Adequacy

While the Named Plaintiffs are willing to act as class representatives and their interests do not appear to be antagonistic to, or at odds with, the putative class, the fact is that they have offered no "significant proof" of commonality or typicality. Most critically, they have offered no significant proof of an actual common plan or scheme, at all of the NYC Restaurants, with regard to the manner in which tipped and hourly employees were to be compensated.

Defendants concede that if class certification were proper, Plaintiffs' counsel are certainly qualified, experienced and able to conduct the litigation. However, because Defendants do not believe that the Named Plaintiffs are adequate class representatives, the Court should not even reach the question of the adequacy of Plaintiffs' counsel.

**b.**     <u>Class Certification Under Rule 23(b)(3) Is Not Appropriate</u>

In addition to meeting each of the requirements of Rule 23(a), Plaintiffs must also meet one of the requirements of Rule 23(b).  They have chosen to proceed under Rule 23(b)(3), which the United States Supreme Court has noted as being "framed for situations 'in which 'class-action treatment is not as clearly called for.'"  *Dukes*, 131 S. Ct. at 2558, quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 614, 615 (1997).

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law and fact predominate over questions that affect only individual members of the putative class, and that a class action superior to other available methods for fairly and efficiently adjudicating the controversy.  *Dukes*, 131 S. Ct. at 2549, n.2.  Even if the Court concludes that Plaintiffs have met the requirements of Fed. R. Civ. P. 23(a), Defendants respectfully submit that Plaintiffs have failed to meet the requirements of Fed. R. Civ. P. 23(b).

**i.**     **Common Questions of Law and Fact Do Not**
        **<u>Predominate Over Individual Claims</u>**

As Defendants' Rule 23(a) discussion of commonality, typicality and adequacy of representation by the Named Plaintiffs makes clear, each putative class member's claim cannot be achieved through generalized proof.  Contrary to Plaintiffs' suggestion, all putative class members have *not* suffered the same harm, and some may not have been harmed at all.  Thus, individualized proof will be necessary with respect to both damages *and* liability.

Given the fact that each of the NYC Restaurants was owned, operated and controlled by a separate corporate entity, with separate management, Defendants respectfully submit that Plaintiffs will be unable to meet their burden of offering significant proof, on a generalized basis, of a common plan or scheme to violate the applicable NYLL.  *See Dukes* at 2550.  That is because Plaintiffs have absolutely no evidence that the pay policy was identical at each of the NYC Restaurants.  Additionally, the Court would have to engage in a fact specific inquiry into

23

each individual employee's circumstances and the accuracy of time records reflecting the hours worked by each employee, and then determine whether the employee worked the particular party, on a particular shift, on a given day.

### ii.   A Class Action is Not the Superior Mechanism For Resolution of Plaintiffs' Claims

Plaintiffs offer no compelling reason why joinder of individual claims cannot be accomplished. Plaintiffs suggest fear of reprisal, and claim that it would be more efficient and cost-effective for the putative class members to pursue their claims under Rule 23. These are conclusory allegations by Plaintiffs, with no supporting proof. On the other hand, procedural fairness and efficiency will not be achieved. Named Plaintiffs who claim that they worked at one restaurant, for as briefly as one day, might be appointed as class representatives of all hourly and tipped employees of that restaurant. Putative class members who worked at one restaurant will seek to recover for allegedly misappropriated tips from private events which occurred at another restaurant, where they never worked. Class treatment will deprive Defendants of contesting liability on a case-by-case basis, but individualized damages claims will still need to be proved.

### iii.   Appointment of Class Counsel is Unnecessary

Because Defendants do not believe that the Named Plaintiffs have satisfied the requirements of Rule 23(b)(3), the Court should not even reach the question of appointment of class counsel. Should the Court believe otherwise, Defendants have no objection to the appointment of Fitapelli & Schaffer.

### iv.   The Proposed Class Notices are Inappropriate and Unnecessary

Plaintiffs' proposed class notices are inappropriate and unnecessary. They are inappropriate because they are based on an incorrect premise, namely, that the Defendants operated as a single, integrated enterprise. As discussed above, that is simply not the case, and

24

for that reason alone, the Court should not approve the proposed class notices.  With respect to the putative class of tipped employees, the notice is inappropriate because the Named Plaintiffs do not claim that tips were misappropriated at any of the NYC Restaurants other than PH-NYC.

In sum, if the Court is inclined to grant class certification, Defendants respectfully request that the Court defer consideration of the proposed class notices until issues relating to Plaintiffs' single integrated enterprise theory and identification of the proper parties are resolved first.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny certification under Fed. R. Civ. P. 23. In the alternative, Defendants request that the Court stay the giving of class notice so that Defendant may file motions for summary judgment at the appropriate time.

Dated: July 2, 2012
      White Plains, New York

                                      Respectfully submitted,

                                      **PINO & ASSOCIATES, LLP**

                                      By:  /s/ Rudolph V. Pino, Jr.
                                          Rudolph V. Pino, Jr. (RP0023)
                                        John M. Socolow (JS5350)
                                        50 Main Street, 16th Floor
                                        White Plains, New York 10606
                                        (914) 946-0600 (telephone)
                                        Attorneys for Defendants

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2012, I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Joseph A. Fitapelli**
**Brian S. Schaffer**
*Attorneys for Plaintiff*

By:  /s/ John M. Socolow